**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| SCOTT KRING, Individually and For Others Similarly Situated<br><br>v.<br><br>KELLY SERVICES GLOBAL, LLC | **Case No. _____**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Scott Kring (Kring) brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Kelley Services Global, LLC (Kelly Services).

2.      Kring worked for Kelly Services as a Start Up Engineer and Construction Superintendent assigned to provide services to Kelley Services' client, Air Products & Chemicals, Inc. (Air Products) in Tennessee, Pennsylvania, Florida, and Texas.

3.      Like the Day Rate Workers (as defined below), Kring regularly worked more than 40 hours in a week.

4.      But Kelly Services never paid Kring and the Day Rate Workers overtime.

5.      Instead, Kelly Services paid Kring and the Day Rate Workers a flat amount for each day worked (a "day rate") without overtime compensation.

6.      Kelly Services never paid Kring or the Day Rate Workers on a "salary basis."

1

7.     Kelly Services' uniform day rate pay scheme violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), the Pennsylvania Minimum Wage Act, 43 PA. STAT. § 333.101, *et seq.* (PMWA), and the Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. § 260.1, *et seq.* (WPCL) by depriving Kring and the Day Rate Workers of overtime pay when they work more than 40 hours in a workweek.

8.     In addition to Kring or the Day Rate Workers' day rates, Kelly Services uniformly paid these employees per diems each day they worked.

9.     But Kelly Services never included these per diems in calculating Kring or the Day Rate Workers' regular rates of pay for overtime purposes.

10.    Kelly Services per diem pay scheme violates the FLSA, PMWA, and WPCL by failing to pay Kring or the Day Rate Workers overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

11.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has general personal jurisdiction over Kelly Services because Kelly Services maintains its principal place of business and corporate headquarters in Troy, Michigan.

14.     Venue is proper because Kelly Services maintains its headquarters in Troy, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

15.     Kring worked for Kelly Services as a Start Up Engineer and Construction Superintendent assigned to provide services to Kelley Services' client, Air Products, in Tennessee, Pennsylvania, Florida, and Texas from approximately May 2021 until September 2022.

16.     Specifically, Kring worked in Tennessee from approximately May 2021 until December 2021; in Pennsylvania from January 2022 until June 2022; in Florida in July and August 2022; and in Texas from August 2022 until September 2022.

17.     During his employment, while working in Pennsylvania and Texas, Kelly Services paid Kring a flat rate for each day he worked (plus per diems), regardless of the total hours he worked in a day or week and failed to pay him overtime ("day rate pay scheme").

18.     Kring's written consent is attached as **Exhibit 1**.

19.     Kring brings this action on behalf of himself and all other similarly situated Kelly Services workers who were paid under its illegal day rate pay scheme.

20.     Kelly Services paid each of these workers a flat amount for each day

3

worked and failed to pay them overtime when they worked more than 40 hours in a workweek in violation of the FLSA, PMWA, and WPCL.

21.     The FLSA Collective of similarly situated employees is defined as:

> **All current and former Kelly Services employees who were paid a day rate with no overtime at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

22.     Kring also seeks to represent such a class under the PMWA and WPCL pursuant to FED. R. CIV. P. 23.

23.     The Pennsylvania Class of similarly situated employees is defined as:

> **All current and former Kelly Services employees who were paid a day rate with no overtime while working in, or being based out of, Pennsylvania at any time during the past 3 years ("Pennsylvania Class Members" or "Pennsylvania Class").**

24.     The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Day Rate Workers."

25.     The Day Rate Workers can be readily ascertained from Kelly Services' business and personnel records.

26.     Kelly Services is a Delaware corporation that maintains its headquarters in Troy, Michigan.

27.     Kelly Services may be served with process by serving its registered agent:

**The Corporation Company, 40600 Ann Arbor Roade East, Suite 201, Plymouth, Michigan 48170**.

## COVERAGE UNDER THE FLSA

28.     At all relevant times, Kelly Services was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.     At all relevant times, Kelly Services was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30.     At all relevant times, Kelly Services has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

31.     At all relevant times, Kelly Services has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

32.     In each of the past 3 years, Kelly Services has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

33.     At all relevant times, Kring and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

34.     Kelly Services uniformly applied its policy of paying its employees, including Kring and the Day Rate Workers, a day rate with no overtime compensation.

35.     Kelly Services applied this policy regardless of any alleged individualized factors such as precise job position, job duties/responsibilities, client assignment, or geographic location.

36.     As a result of Kelly Services' uniform day rate pay scheme, Kring and the Day Rate Workers do not receive overtime in violation of the FLSA.

37.     Kelly Services' uniform compensation scheme of paying Kring and the Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

38.     Kelly Services is an employment and staffing company with global operations, including in Pennsylvania.

39.     Kelly Services hires employees (including Kring and the Day Rate Workers) to provide services to its clients.

40.     Many of these individuals worked for Kelly Services on a day rate basis (without overtime pay).

41.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices.

42.     For example, Kring worked for Kelly Services as a Start Up Engineer and Construction Superintendent assigned to provide services to Kelley Services' client, Air Products, in Tennessee, Pennsylvania, Florida, and Texas from approximately May 2021 until September 2022.

6

43.     As a Start Up Engineer and Construction Superintendent, Kring's primary job duties included overseeing pressure testing of newly constructed oil and gas pipes to ensure they complied with Air Products' policies, procedures, and specifications, as well as preparing for pre-commissioning activities.

44.     During his employment, while working in Pennsylvania and Texas, Kelly Services paid Kring on a day rate basis (without overtime pay).

45.     Specifically, while working in Pennsylvania, Kelly Services paid Kring a day rate of $715 (including his per diems) for each day he actually worked, regardless of the number of hours he worked that day (or that workweek) and failed to pay him overtime compensation:

| HOURS AND EARNINGS | | | | | | |
| ----- Current----- | | | | | | |
| Description | BranRef Nbr | W/S Date | W/E Date | Rate | Units | Earnings |
| Misc Pay | 56G7A0040 | 03/14/22 | 03/20/22 | 715.00 | 7.00 | 5,005.00 |

46.     Likewise, while working in Texas, Kelly Services paid Kring a day rate of $750 (including his per diems) for each day he actually worked, regardless of the number of hours he worked that day (or that workweek) and failed to pay him overtime compensation:

| HOURS AND EARNINGS | | | | | | |
| ----- Current----- | | | | | | |
| Description | BranRef Nbr | W/S Date | W/E Date | Rate | Units | Earnings |
| Misc Pay | 56G7A0042 | 08/29/22 | 09/04/22 | 750.00 | 5.00 | 3,750.00 |

47.     Kelly Services uniformly paid Kring and the Day Rate Workers under its illegal day rate pay scheme that deprived these employees of overtime compensation when they worked more than 40 hours in a workweek.

48.     Liekwise, Kelly Services uniformly paid Kring and the Day Rate Workers under its illegal per diem pay scheme that deprived these employees of overtime compensation at the proper premium rate based on all renumeration received.

49.     Kelly Services does not pay Kring and the Day Rate Workers a guaranteed salary.

50.     Rather, Kelly Services only pays Kring and the Day Rate Workers their set day rates (plus per diems) for the actual days they worked.

51.     If Kring and the Day Rate Workers did not work, they did not get paid.

52.     Thus, Kring and the Day Rate Workers are not paid on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S.Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

53.     Kelly Services paid Kring and the Day Rate Workers on a day rate basis (without overtime).

54.     Kring and the Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

55.     Kring and the Day Rate Workers do not receive overtime pay at the proper premium rate when they work more than 40 hours in a week.

8

56.     This is despite Kring and the Day Rate Workers typically working 10+ hours a day, for 5 to 7 days a week.

57.     Although Kring and the Day Rate Workers typically worked 50-70+ hours/workweek, Kelly Services never paid them overtime.

58.     Kring and the Day Rate Workers work in accordance with the schedule set by Kelly Services and/or its clients.

59.     Kelly Services knows Kring and the Day Rate Workers work 10+ hours a day, for up to 7 days a week.

60.     Kelly Services' records reflect the fact that Kring and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

61.     Rather than receiving time and half as required by the FLSA, PMWA, and WPCL, Kelly Services pays Kring and the Day Rate Workers a day rate regardless of the number of hours they worked in a day or workweek, and even if they worked more than 40 hours in a workweek.

62.     All of the Day Rate Workers work similar hours and are denied overtime at the proper premium rate as a result of the same illegal pay practices (Kelly Services' day rate plus per diems pay scheme).

63.     All of the Day Rate Workers work in excess of 40 hours each week and often work 70+ hours in a workweek.

64.     Kelly Services uniformly denies Kring and the Day Rate Workers overtime wages at the proper premium rate for the hours they work more than 40 hours in a workweek.

65.     Kelly Services' policy of paying Kring and the Day Rate Workers a day rate (plus per diems) with no overtime compensation violates the FLSA, PMWA, and WPCL because it deprives Kring and the Day Rate Workers of overtime wages at the proper premium rate (based on *all* renumeration received) for the hours they work in excess of 40 hours in a workweek.

66.     Kelly Services is aware, or should have been aware, that it was subject to the FLSA, PMWA, and WPCL, including their respective overtime requirements.

67.     Kelly Services is aware, or should have been aware, that the FLSA, PMWA, and WPCL required it to pay Kring and the Day Rate Workers overtime at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

68.     Kelly Services is aware, or should have been aware, that Kring and the Day Rate Workers were non-exempt from the FLSA, PMWA, and WPCL's overtime provisions and, therefore, entitled to overtime pay.

69.     Kelly Services is aware, or should have been aware, that Kring and the Day Rate Workers regularly worked more than 40 hours in a workweek because it expected and required these workers to do so.

10

70.     Kelly Services knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA, PMWA, and WPCL.

71.     Nonetheless, Kelly Services did not pay Kring and the Day Rate Workers overtime at the proper premium rate when they worked more than 40 hours in a workweek in violation of the FLSA, PMWA, and WPCL.

72.     Kelly Services knowingly, willfully, or in reckless disregard carried out this illegal day rate pay scheme that deprived Kring and the Day Rate Workers of overtime compensation at the proper premium rate in violation of the FLSA, PMWA, and WPCL.

73.     Kelly Services' failure to pay Kring and the Day Rate Workers overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

74.     Kring realleges and incorporates all other paragraphs by reference.

75.     Kring brings his claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

76.     Numerous individuals were victimized by Kelly Services' pattern, practice, and policy of paying its employees, including Kring and the Day Rate Workers, a day rate (plus per diems) with no overtime for hours worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA, PMWA, and WPCL.

77.     Numerous other Day Rate Workers worked with Kring and indicated they were paid in the same manner (a day rate plus per diems with no overtime) and performed similar work.

78.     Based on his experience and tenure with Kelly Services, Kring is aware that that the illegal practices Kelly Services imposed on him were likewise imposed on the Day Rate Workers.

79.     The Day Rate Workers are similarly situated in all relevant respects.

80.     Kelly Services' failure to pay Kring and the Day Rate Workers overtime wages at the premium rates required by the FLSA, PMWA, and WPCL results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Day Rate Workers.

81.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

82.     Therefore, the specific job titles or precise job locations of the Day Rate Workers do not prevent class or collective treatment.

83.     Rather, the Day Rate Workers are held together by Kelly Services uniform day rate (plus per diems) pay scheme that systematically deprived Kring and the Day Rate Workers of overtime wages at the proper premium rate when they worked in excess of 40 hours in a workweek.

84. The Day Rate Workers are similarly denied overtime compensation at the proper premium rate for hours worked in excess of 40 hours in a workweek.

85. The back wages Kelly Services owes Kring and the Day Rate Workers will be calculated using the same records and using the same formula.

86. Kring's experiences are typical of the experiences of the Day Rate Workers.

87. Kring's claims are, therefore, typical of the claims of the Day Rate Workers.

88. Kring has no interest contrary to, or in conflict with, the Day Rate Workers.

89. Like each Day Rate Worker, Kring has an interest in obtaining the unpaid overtime wages owed to them under federal and/or state law.

90. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent this class and collective action, many Day Rate Workers likely will not obtain redress for their injuries, and Kelly Services will reap the unjust benefits of violating the FLSA, PMWA, and WPCL.

92. Even if some of the Day Rate Workers could afford individual litigation against Kelly Services, it would be unduly burdensome to the judicial system.

93.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Day Rate Workers and provide judicial consistency.

94.     The questions of law and fact that are common to Kring and each Day Rate Worker predominate over any questions affecting solely the individual members.

95.     Among the common questions of law and fact are:

a.     Whether Kelly Services' illegal pay practices were applied uniformly across the nation to all Day Rate Workers;

b.     Whether Kring and the Day Rate Workers were exempt from overtime;

c.     Whether Kelly Services' day rate pay scheme satisfies the salary basis test;

d.     Whether Kelly Services' decision to not pay Kring and the Day Rate Workers overtime at the proper premium rate was made in good faith;

e.     Whether Kelly Services violations of the FLSA, PMWA, and/or WPCL resulted from a continuing course of conduct; and

f.     Whether Kelly Services' violations of the FLSA, PMWA, and WPCL were willful.

96.     Kring and the Day Rate Workers sustained damages arising out of Kelly Services' illegal and uniform employment policies and practices.

97.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

98.    Therefore, the issue of damages does not preclude class or collective treatment.

99.    Kelly Services is liable under the FLSA, PMWA, and WPCL for failing to pay Kring and the Day Rate Workers overtime wages at the proper premium rate.

100.    Consistent with Kelly Services' illegal pay policy, Kring and the Day Rate Workers were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

101.    As part of its regular business practices, Kelly Services intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, PMWA, and WPCL with respect to Kring and the Day Rate Workers.

102.    Kelly Services' illegal day rate (plus per diems) pay scheme deprived Kring and the Day Rate Workers of the premium overtime wages they are owed under federal and state law.

103.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

104.    Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

105.   Those similarly situated workers (the Day Rate Workers) are known to Kelly Services, are readily identifiable, and can be located through Kelly Services' business and personnel records.

### FIRST CAUSE OF ACTION
### FLSA VIOLATIONS
### (FLSA COLLECTIVE)

106.   Kring realleges and incorporates all other paragraphs by reference.

107.   Kring brings his FLSA claims as a collective action under 29 U.S.C. § 216(b).

108.   As set forth herein, Kelly Services violated, and is violating, the FLSA, 29 U.S.C. § 207, by employing employees (Kring and the FLSA Collective Members) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating those employees for their work in excess of 40 hours per week at rates not less than 1.5 times the regular rates for which they were employed.

109.   Kelly Services knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Kring and the FLSA Collective Members overtime compensation.

110.   Kelly Services' failure to pay Kring and the FLSA Collective Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

111.    Accordingly, Kring and the FLSA Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay (based on all renumeration received), plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**PMWA VIOLATIONS**
**(PENNSYLVANIA CLASS)**

112.    Kring realleges and incorporates all other paragraphs by reference.

113.    Kring brings his PMWA claims as a class action pursuant to FED. R. CIV. P. 23.

114.    The conduct alleged violates the PMWA, 43 PA. STAT. § 333.101, *et seq.*

115.    At all relevant times, Kelly Services was an "employer" within the meaning of, and subject to the requirements of, the PMWA. *See* 43 PA. STAT. § 333.103(g).

116.    At all relevant times, Kelly Services employed Kring and the Pennsylvania Class Members as "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

117.    Section 333.104(c) requires employers, like Kelly Services, to pay employees, like Kring and the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay (based on all renumeration received) for all hours worked in excess of 40 hours in a workweek. 43 PA. STAT. § 333.104(c).

118.    Kring and the Pennsylvania Class Member are entitled to overtime pay under the PMWA.

17

119.    Kelly Services violated, and is violating, the PMWA by failing to pay Kring and the Pennsylvania Class Members overtime (at the proper premium rate) when these employees work excess of 40 hours per workweek. *See* 43 PA. STAT. § 333.104(c).

120.    Kelly Services knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Kring and the Pennsylvania Class Members overtime compensation.

121.    Kelly Services' failure to pay Kring and the Pennsylvania Class Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

122.    Accordingly, Kring and the Pennsylvania Class Members are entitled to recover their unpaid overtime in amount equal to 1.5 times the regular rate of pay for all hours worked in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, as well as attorney's fees, costs, and expenses of this action, as provided by the PMWA. *See* 43 PA. STAT. § 333.113.

### THIRD CAUSE OF ACTION
### WPCL VIOLATIONS
### (PENNSYLVANIA CLASS)

123.    Kring realleges and incorporates all other paragraphs by reference.

124.    Kring brings his WPCL claims as a class action pursuant to FED. R. CIV. P. 23.

125.    The conduct alleged violates the WPCL, 43 PA. STAT. § 260.1, *et seq.*

126. At all relevant times, Kelly Services was an "employer" within the meaning of, and subject to the requirements of, the WPCL. *See* 43 Pᴀ. Sᴛᴀᴛ. § 260.2a.

127. At all relevant times, Kelly Services employed Kring and the Pennsylvania Class Members as "employees" within the meaning of the WPCL.

128. The WPCL requires employers, like Kelly Services, to pay employees, like Kring and the Pennsylvania Class Members, all wages and overtime wages earned, due, and owing to them on their regular payday. 43 Pᴀ. Sᴛᴀᴛ. § 260.3(a).

129. As a result of Kelly Services illegal day rate (plus per diems) pay scheme, Kring and the Pennsylvania Class Member have been deprived of all wages earned, due, and owed to them. *See* 43 Pᴀ. Sᴛᴀᴛ. § 260.3(a).

130. Accordingly, Kring and the Pennsylvania Class Members are entitled to recover their unpaid wages, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* 43 Pᴀ. Sᴛᴀᴛ. § 260.9a.

### Jᴜʀʏ Dᴇᴍᴀɴᴅ

131. Kring demands a trial by jury.

### Rᴇʟɪᴇғ Sᴏᴜɢʜᴛ

WHEREFORE, Kring, individually and on behalf of the Day Rate Workers, seeks the following relief:

> a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the

FLSA Collective Members allowing them to join this action by filing their written consent;

b. An Order designating the Pennsylvania Class as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Kring and his counsel to represent the interests of the FLSA Collective and Pennsylvania Class;

d. An Order pursuant to Section 16(b) of the FLSA finding Kelly Services liable for unpaid back wages due to Kring and the FLSA Collective Members and for liquidated damages in an amount equal to their unpaid compensation;

e. An Order finding Kelly Services liable for unpaid overtime wages owed to Kring and the Pennsylvania Class Members under the PMWA, as well as for any available penalties;

f. An Order finding Kelly Services liable for all unpaid wages owed Kring and the Pennsylvania Class Members under the WPCL and for liquidated damages in an amount equal to their unpaid wages;

g. A Judgment against Kelly Services awarding Kring and the Day Rate Workers all their unpaid wages and other damages available under the FLSA, PMWA, and WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Jennifer McManus*
          **Jennifer L. McManus (P65976)**
          Local Counsel for Plaintiff
**Fagan McManus, pc**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Josephson Dunlap llp**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch***
TX Bar No. 24001807
**Bruckner Burch pllc**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
*Pro hac vice application forthcoming*

**Attorneys for Plaintiff
& Putative Class Members**

Dated:  April 14, 2023